UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA CLEMENTE, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, et al., <br><br> Defendants. | Case No. 1:20-cv-1527 (TNM) |

## MEMORANDUM OPINION

Plaintiff Angela Clemente submitted a broad Freedom of Information Act request to the Federal Bureau of Investigation seeking records related to Jeffrey Epstein and his alleged criminal activities. The FBI located thousands of responsive records, released some in full and others with redactions, and withheld the vast majority under various FOIA exemptions. The FBI now moves for summary judgment, submitting exhaustive declarations and *Vaughn* indices. Clemente's counsel never responded. Without arguments or evidence to the contrary, the Court will grant the FBI's motion.

I.

Clemente submitted a FOIA request to the FBI essentially seeking all records it had about Jeffrey Epstein and his alleged criminal activities. *See generally* Compl., ECF No. 1; *see also id.*, Ex. 1, ECF No. 1-5 (letter requesting records under FOIA). The FBI searched for responsive records, initially locating 11,571 responsive pages. *See* Def.'s Mot. for Summ. J. (Def.'s MSJ) at 3–4, ECF No. 34-2; Decl. of Michael G. Seidel (Seidel Decl.) ¶ 5, ECF No. 34-4; *see also* Exs. S & T (*Vaughn* Indices), ECF Nos. 34-6, 34-7. The FBI advised Clemente that some responsive

1

records were accessible in the FBI's FOIA Library (the "Vault") using the search term "Jeffrey Epstein," and directed her to that online repository. *See id.* ¶ 7. And it informed her that other records are located within an investigative file exempt from disclosure under FOIA Exemption 7(A), which shields law enforcement records pertaining to a pending or prospective enforcement proceeding when release of the information could reasonably be expected to interfere with those proceedings. *See id.*

The FBI then released 181 pages of the Vault records in full and 1,051 pages in part. *See id.* ¶ 5. It withheld 10,339 pages in full under Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). *See id.* The FBI then processed 1,505 additional responsive pages, releasing 665 in full and 743 in part. *See id.* It withheld 97 of these pages in full because they were either duplicates of other pages processed elsewhere in the production or exempt under Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). *See id.*; *see also id.* ¶ 31.

The FBI also issued Clemente two *Glomar* responses. *See id.* ¶ 7. The FBI explained that even acknowledging the existence of records about third-party individuals could reasonably be expected to invade personal privacy under Exemptions 6 and 7(C). *See id.*; *see also id.* ¶ 171. Similarly, the FBI argued that acknowledging the existence of records about confidential human sources could jeopardize its ability to investigate and fight criminal behavior and could subject the sources to reprisal under Exemption 7(D). *See id.* ¶ 7; *see also id.* ¶¶ 172–74. Finally, the FBI argues that it released all non-segregable material. *See id.* ¶ 164.

## II.

Courts resolve the "vast majority" of FOIA cases at summary judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. And a factual dispute is material if it could alter the outcome of the suit under the substantive governing law. *See id.*

An agency is entitled to summary judgment in the FOIA context if it shows that it has conducted a search reasonably calculated to uncover all relevant documents, *see Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007), and that each relevant record has been produced or is exempt from disclosure, *see Students Against Genocide v. DOS*, 257 F.3d 828, 833 (D.C. Cir. 2001). FOIA requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions[.]" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

The agency bears the burden to show that the claimed exemptions apply. *See ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). Courts construe FOIA exemptions narrowly, *see Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011), and consider their applicability de novo, *see King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987). An agency need not produce a record if a court has enjoined its disclosure, because the agency has no discretion to exercise in such cases. *See Judicial Watch, Inc. v. DOJ*, 813 F.3d 380, 383 (D.C. Cir. 2016).

An agency may submit "sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, to demonstrate that [it] has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption[.]" *Brennan Ctr. for Justice v. DOS*, 296 F. Supp. 3d 73, 80 (D.D.C. 2017); *see also Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). If no record evidence contradicts this information and there is no evidence of agency bad faith, then summary judgment is appropriate. *See ACLU*, 628 F.3d at

626; *see also Ancient Coin Collectors Guild v. DOS*, 641 F.3d 504, 509 (D.C. Cir. 2011) ("Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.").

### III.

Recall that Clemente failed to respond to the FBI's motion for summary judgment.[1] The Court may therefore treat the FBI's Statement of Material Facts Not in Dispute (SMF) as admitted. *See* LCvR 7(h)(1). But the Court still must conduct an independent analysis of whether the FBI's search was adequate, whether it properly asserted exemptions, whether it properly provided *Glomar* responses, and whether it met its segregability burden. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506–07 (D.C. Cir. 2016) (explaining that district courts cannot treat a motion for summary judgment as conceded for want of opposition because "[t]he burden is always on the movant to demonstrate why summary judgment is warranted"); *see also McGehee v. DOJ,* 362 F. Supp. 3d 14, 18 (D.D.C. 2019) (granting summary judgment after independent analysis in FOIA case when same counsel failed to oppose motion).

### A.

The FBI's search was adequate. To obtain summary judgment, the FBI must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency need not uncover every existing document; rather, it must show that its search has been adequate and reasonable. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The Court's inquiry therefore centers on the

---

[1] Clemente is represented by James H. Lesar, Esq., who has repeatedly failed to zealously prosecute his cases in this district. *See, e.g.*, *McGehee v. DOJ*, 362 F. Supp. 3d 14, 18 & n.2 (D.D.C. 2019).

4

method of the search, not its results. *See, e.g.*, *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The FBI's primary declarant shows that the FBI's search was reasonably calculated to uncover all records responsive to Clemente's FOIA request. He describes how the FBI organizes and indexes its files, and how it searches various record-keeping systems. *See* Seidel Decl. ¶¶ 35–48. For Clemente's request, the FBI searched both its FOIA document processing system and its Central Records System for responsive records. *See id.* ¶ 48. And the FBI's declarant provides the terms searched and cut-off dates used. *See id.* The FBI has thus provided a "reasonably detailed affidavit setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68 (cleaned up).

**B.**

The FBI properly asserted Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) for the withheld records.

**1.**

First up is Exemption 1. It protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The FBI here relies on Executive Order 13,526, which prescribes a uniform system for classifying and safeguarding national security information. *See* Seidel Decl. ¶¶ 69–70. So the FBI must show both that the information was classified under the proper procedures and that the withheld information substantively falls under this Executive Order. *See Salisbury v. United States*, 690 F.2d 966, 971–72 (D.C. Cir. 1982).

In the national security context, courts "consistently defer[] to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studs. v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003). This is so because courts are generally ill-equipped to second-guess an agency's opinion in this context. *See, e.g.*, *ACLU*, 628 F.3d at 624. The FBI's burden is therefore "a light one," *id.*, and its arguments need only be both "plausible" and "logical" to justify the invocation of a FOIA exemption in this context. *See Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

The FBI's declarant reviewed the documents and determined that they contain information properly classified as "secret" under Executive Order 13,526. *See* Seidel Decl. ¶ 72. He explained that the withheld information relates to the FBI's intelligence activities, sources, and intelligence-gathering methods. *See id.* ¶ 74. And the information "consists of detailed intelligence information gathered or compiled by the FBI on a specific individual(s) of national security interest." *Id.* Releasing this information "could reasonably be expected to cause serious damage to the national security" because criminals could learn about the FBI's intelligence-gathering techniques. *Id.* ¶ 75. More, disclosure would reveal specific targets of national security-related investigations and the priorities the FBI assigns to such investigations. *See id.*

The Court finds that it is both plausible and logical that disclosure of the withheld information could reasonably be expected to damage national security. The FBI persuasively explains how disclosure of the information at issue would "severely disrupt" its intelligence-gathering capabilities. Seidel Decl. ¶ 75. And "finding no evidence in the record to support the

6

opposite conclusion, no further investigation is required." *ACLU*, 628 F.3d at 625. The Court thus finds that the FBI has properly invoked Exemption 1.[2]

**2.**

Exemption 3 is next. Exemption 3 protects information "specifically exempted from disclosure by statute" if the statute neither leaves discretion about disclosure nor establishes particular criteria for withholding or refers to specific matters to be withheld. 5 U.S.C. § 552(b)(3). The FBI asserted this exemption to withhold in part or in full information that four statutes shield from disclosure. *See* Def.'s MSJ at 17; Seidel Decl. ¶¶ 77–84.

*First*, the FBI attests that it properly withheld names, images, and other identifying information of child witnesses and victims under the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509. *See* Def.'s MSJ at 17; Seidel Decl. ¶ 77. Other courts in this district have held that this Act "qualifies as an Exemption 3 withholding statute." *See, e.g.*, *Rodriguez v. Dep't of Army*, 31 F. Supp. 3d 218, 237 (D.D.C. 2014). The Court is satisfied that this statute justifies the FBI's withholding of information related to minor victims and witnesses as part of the sexual abuse investigation involving Jeffrey Epstein. *See* Seidel Decl. ¶ 77.[3]

---

[2] For Exemptions 1 and 3, no foreseeable harm analysis is required. *See Rosenberg v. DOD*, 342 F. Supp. 3d 62, 73 n.1 (D.D.C. 2018) (explaining that the foreseeable harm analysis only applies to exemptions under which discretionary disclosures are possible, which does not include Exemptions 1 or 3 because disclosure is prohibited by law). Even if foreseeable harm analysis were required, the Court finds that the FBI easily meets its burden as to its Exemption 1 and 3 withholdings because it asserts many harms in a focused and concrete way. *See Reps. Comm. v. FBI*, 3 F.4th 350, 371 (D.C. Cir. 2021); *see also Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (noting that an agency's foreseeable harm burden may be more easily met when "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated").

[3] The FBI asserts that it also withheld some of this information under Exemptions 6, 7(C), and 7(D) too. *See* Seidel Decl. ¶ 77.

*Second*, the FBI withheld grand jury materials falling within Federal Rule of Criminal Procedure 6(e), which protects matters before the grand jury. The D.C. Circuit has explained that even though "a rule is not generally considered to be a statute, it qualifies as one under FOIA because the Congress has enacted it into positive law." *Murphy v. EOUSA*, 789 F.3d 204, 206 (D.C. Cir. 2015). And the Circuit has also held that an agency may withhold information related to a grand jury matter under Exemption 3 "if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses." *Id.* The FBI withheld the names of subpoena recipients, specific records it sought via subpoena, and records provided in response to its subpoenas. *See* Seidel Decl. ¶ 78. The Court agrees that disclosure of this information would violate the secrecy of grand jury proceedings, including the identities of witnesses, and that the FBI properly withheld this information.

*Third*, the FBI withheld documents pertaining to arrests and the criminal history of third-party juveniles under the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038. *See* Def.'s MSJ at 18; Seidel Decl. ¶ 79. This Act shields from disclosure all information related to any juvenile delinquency proceeding, with a few exceptions. *See* 18 U.S.C. § 5083(a)(1–6). Because Clemente's request does not qualify for any of the Act's exceptions, the Court finds that the FBI properly withheld these records under Exemption 3.[4]

*Fourth*, the FBI withheld information in two documents under the National Security Act, 50 U.S.C. § 3024(i)(1). *See* Seidel Decl. ¶ 80. It asserts some of these withholdings alongside Exemption 1. *See id.*; *see also id.* ¶ 83. As the FBI explains, this Act affords absolute protection to intelligence sources and methods. *See* 50 U.S.C. § 3024(i)(1). And the FBI determined that

---

[4] The FBI asserts that it withheld some of this information under Exemptions 6 and 7(C) too. *See* Seidel Decl. ¶ 79.

information in the two withheld documents "would reveal intelligence sources and methods" allowing criminals to develop and implement countermeasures, all to the detriment of the nation's security. Seidel Decl. ¶ 83; *see also id.* ¶ 82 n.35. To bolster its assertions, the FBI submitted a classified *ex parte* declaration. *See id.* ¶ 84. The Court has reviewed this declaration and finds that it supports the FBI's assertion of Exemption 3 under this Act. The FBI therefore properly withheld these records.

### 3.

Next up is Exemption 5. This exemption shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than . . . in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). In other words, this exemption protects materials that would be privileged in the civil discovery context, including materials covered by the deliberative process and attorney work product privileges.

The deliberative process privilege "shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." *Sierra Club*, 141 S. Ct. at 785. To qualify for the privilege, a document must be both predecisional and deliberative. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). A document is predecisional if the agency generated it before its final decision on a matter. *See, e.g.*, *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is deliberative if the agency prepared it to "help the agency formulate its position." *Sierra Club*, 141 S. Ct. at 786. There is one final step. The FBI must also provide a "focused

and concrete" explanation of why disclosure will cause foreseeable harm "in the specific context of the agency action at issue." *Reps. Comm.*, 3 F.4th at 370.

The FBI withheld two categories of information under the deliberative process privilege: FOIA processing records and emails discussing FOIA search decisions. *See* Seidel Decl. ¶¶ 90–91. The FBI explains that the first category includes "search slips, electronic surveillance search slips, and internal FBI administrative tracking forms." *Id.* ¶¶ 88–89. It argues that these are predecisional because they catalog how the FBI formulates a final FOIA search decision. *See id.* ¶ 91. And the FBI asserts that they are deliberative because they show the way search avenues are discussed and revised. *See id.* The Court agrees. *Cf. Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 18–19 (D.D.C. 2019) (finding that similar documents qualify for the deliberative process privilege), *aff'd sub nom.*, 971 F.3d 364 (D.C. Cir. 2020).

As for foreseeable harm, the FBI explains that disclosure of the FOIA processing records would "curtail[] proper deliberations during the processing of FOIA requests" and lead to "public confusion as to the FBI's final decisions" because it would "show considered decisions never adopted and actions never taken and cause doubt as to the FBI's final decision or action." *See id.* Without evidence from Clemente to the contrary, the Court finds that the FBI carries its foreseeable harm burden as to this information. *See Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 121–22 (D.D.C. 2021) (explaining that similar rationales coupled with assertions about public confusion can suffice).

Now for the emails discussing FOIA search decisions. The FBI withheld correspondence between the FBI's Records Management Division, FBI field offices, and DOJ's Office of Public Affairs about the pending status of an investigation and the status of processing records associated with the investigation. *See id.* ¶¶ 92–93. The FBI explains that these emails are

deliberative and predecisional because they discuss whether information pertaining to an investigation can be released to the FOIA requester and contain "strategy development on how to handle" FOIA responses, including whether expedited processing is warranted. *Id.* ¶ 92. The Court agrees that these emails qualify for the deliberative process privilege. *Cf. Machado Amadis*, 388 F. Supp. 3d at 18–19 (finding that an agency's impressions and analysis of its FOIA searches and corresponding recommendations qualify for the deliberative process privilege).

As for foreseeable harm, the FBI asserts that releasing the information in these emails would allow FOIA requesters to judge "the nature of certain FBI law enforcement investigations," chill internal discussions about how to respond to FOIA requests, and "create public confusion because [the information] predates final agency decisions." *Id.* ¶¶ 93, 95. The FBI has thus provided a "focused and concrete demonstration of why disclosure of the particular type of material" will cause foreseeable harm "in the specific context of the agency action at issue." *Reps. Comm.*, 3 F.4th at 370.

The FBI also argues that some documents qualify for Exemption 5 because the attorney work-product doctrine protects them. This doctrine protects documents and other records prepared by or for an attorney in anticipation of litigation. *See Coastal States*, 617 F.2d at 863–64. The FBI relies on this doctrine to withhold a few documents. *See* Seidel Decl. ¶ 97. They include (1) memoranda containing information from an Assistant United States Attorney (AUSA) about the timing of Epstein's indictment and seizure of his assets; (2) a memorandum sent to an AUSA about the value of an asset Epstein owned for consideration of its seizure; and (3) memoranda describing actions the FBI is taking at the direction of an AUSA related to a potential forfeiture action for Epstein's assets and the potential prosecution of Epstein and others. *See id.* The FBI explains that it created these memoranda "in reasonable anticipation of

litigation" and that they contain the "AUSA's prosecutorial strategy and the information the AUSA was gathering to either support an indictment of Jeffrey Epstein or a civil forfeiture action or both." *Id.* The Court agrees with the FBI that these documents fall squarely within the attorney work-product doctrine. *See Coastal States*, 617 F.2d at 864–65.

As for foreseeable harm, the FBI notes that releasing this type of information would impede prosecutors' ability to properly prepare legal theories and would hinder their ability to effectively represent the United States in any future litigation related to Epstein's co-conspirators. *See* Seidel Decl. ¶ 97. The Court agrees that this is a reasonably foreseeable harm articulated with sufficient contextual specificity. *Cf. Reps. Comm.*, 567 F. Supp. 3d at 120. So the FBI properly withheld these memoranda under Exemption 5.

### 4.

The FBI also claims Exemptions 6 and 7(C). Though the two exemptions are similar, 7(C) "provides broader privacy protections" and "thus establishes a lower bar for withholding material." *CREW v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017). So when agencies rely on both Exemptions 6 and 7(C) for the same material, the Court need not "consider Exemption 6 separately[.]" *Roth v. DOJ*, 642 F.3d 675, 681 (D.C. Cir. 2017). Exemption 7(C) protects information compiled for law enforcement purposes if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The FBI always invokes the two exemptions in tandem. *See* Seidel Decl. ¶¶ 103–14. The Court thus considers only Exemption 7(C).

Exemption 7(C) protects from disclosure law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *see also Shapiro*, 893 F.3d at 800. "To determine whether an invasion of

privacy is unwarranted, courts balance the privacy interest against the public interest in disclosure, including any potential interest in airing governmental misconduct." *Prot. Demo'cy Project, Inc. v. NSA*, 10 F.4th 879, 889 (D.C. Cir. 2021). The relevant public interest here is whether the withheld information "sheds light on an agency's performance of its statutory duties." *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

The FBI withheld the names and identifying information of several categories of people under Exemption 7(C). They are: (1) third parties of investigative interest; (2) FBI special agents and professional personnel, including victim specialists; (3) third-party victims; (4) local law enforcement personnel; (5) third parties mentioned as part of the FBI's investigative efforts or who provided information; (6) non-FBI federal government personnel; and (7) state and local government personnel. *See* Seidel Decl. ¶¶ 103–114. The FBI attests that it "scrutinized" each piece of information it withheld "to determine the nature and strength of the privacy interest of each individual whose name or other identifying information appears in the records at issue." Seidel Decl. ¶ 101. And the FBI explains that it balanced each individual's privacy interest against the public's interest in disclosure. *See id.*

The FBI also asserts that foreseeable harm would result from disclosure of these individuals' names or identifying information. The FBI explains that the individuals whose identities are released could be "targeted for reprisal" or may "become targets of inquiries for unauthorized access to investigative information." *Id.* ¶ 106; *see also id.* ¶¶ 103, 109, 112. So too for victims, who could also suffer embarrassment if their names were released. *See id.* ¶ 108. And the FBI fears that releasing certain names "could lead to harassment, intimidation by investigative subjects, legal or economic detriment, physical harm, or even death." *Id.* ¶ 114.

The FBI has thoroughly described the risk of foreseeable harm in the specific context of the agency action at issue. *See Reps. Comm.*, 3 F.4th at 369.

Nothing in the record suggests that the withheld information clarifies the FBI's performance of its statutory duties. *See Reps. Comm.*, 489 U.S. at 773. And given the FBI's uncontradicted, plausible declaration showing a logical relationship to the exemption and foreseeable harm, the Court find that the FBI has properly invoked Exemption 7(C). *See Ancient Coin Collectors Guild*, 641 F.3d at 509.

**5.**

The FBI also asserts Exemptions 7(A), (D), and (E), all of which protect "records or information compiled for law enforcement purposes." 5 U.S.C. §552(b)(7). To properly assert Exemption 7 at all, the FBI must first show that the records relate to "anything that can fairly be characterized as an enforcement proceeding." *See Jefferson v. DOJ*, 284 F.3d 172, 177 (D.C. Cir. 2002). Courts typically give criminal law enforcement agencies deference when they assert that records were compiled for law enforcement purposes. *See, e.g.*, *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). The FBI need only rationally show that the information relates to the agency's enforcement functions. *See Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).

It does so here. The FBI explains at length that it compiled the records "in furtherance of the FBI's investigation of child prostitution and sex trafficking involving Jeffrey Epstein and other individuals of investigative interest." Seidel Decl. ¶ 54. Though Epstein died soon after he was indicted, the FBI explains that its investigation is ongoing because "it includes other individuals of investigative interest." *Id.* Because the records it withheld under Exemption 7 "were compiled to document the FBI's investigation of potential federal crimes," *see id.*, the

Court agrees that they satisfy Exemption 7's threshold requirement. The Court next analyzes the FBI's assertion of Exemption 7's subsections.

*First,* Exemption 7(A). To justify its application of this exemption, the FBI must show that a law enforcement proceeding is pending or prospective and that disclosure of the information could harm the proceeding. *See Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). The FBI asserts this exemption to protect information related to an ongoing criminal investigation of Jeffrey Epstein and others for sex trafficking and child prostitution, and to protect any prospective prosecution of potential co-conspirators. *See* Def.'s MSJ at 12–13; Seidel Decl. ¶¶ 55–59. The FBI's declarant describes the types of documents exempt from release, including emails, interview forms, interview notes, documents from state and local law enforcement agencies, documents implementing sensitive investigative techniques, grand jury subpoenas, evidence logs, and more. *See* Seidel Decl. ¶ 59.

And the FBI determined that releasing these documents "would provide criminals with information about the government's investigation and enforcement strategies in ongoing matters, allow them to predict and potentially thwart these strategies, and allow them to identify and tamper with witnesses or otherwise destroy evidence." *Id.* ¶ 57. It also confirmed that release of the records would harm at least one active investigation and any prospective prosecutions of Epstein's potential co-conspirators. *See id.* The FBI properly asserts Exemption 7(A) because it identifies the pertinent investigations and explains how release of the withheld information could imperil them. *Cf. Mapother*, 3 F.3d at 1540.

*Second*, Exemption 7(D). It protects "records or information compiled for law enforcement purposes" when release of the information "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). To invoke Exemption

7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. *See DOJ v. Landano*, 508 U.S. 165, 172 (1993). The FBI withheld information from both types of sources.

First up are sources operating under express assurances of confidentiality. To meet its burden, the FBI must present "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998). The FBI asserts that it found evidence while processing the records that certain individuals "either requested that their identity not be revealed" or that FBI investigators "would have, by standard practice, expressly promised them that their identity and the information provided (outside of its investigative use) would remain confidential." Seidel Decl. ¶ 121. More, the FBI explains that the designation "CW" (cooperating witness) or "CHS" (confidential human source) on certain files indicates that these sources provided information under an express grant of confidentiality. *Id.* ¶ 122. The FBI therefore offers probative evidence that these sources received express assurances of confidentiality. *See Campbell*, 164 F.3d at 34. So the FBI withheld their names and identifying information and the information they provided. *See id.* ¶¶ 121–23. As for foreseeable harm, the FBI explains that releasing this information would "display an unwillingness by the FBI to honor its assurance of confidentiality to current and future sources," causing "great detriment to the FBI's ability to recruit and maintain reliable confidential sources." *Id.* ¶¶ 122–23. The FBI properly asserted Exemption 7(D) as to this information.

Next up are sources operating under implied confidentiality. The FBI argues that for certain sources, the circumstances in which they provided information support an inference of confidentiality. *See id.* ¶¶ 116, 118–20, 124–26. These circumstances include the unique

16

position of the sources, their inside knowledge of investigative subjects, and the detailed information they provided about the trafficking and prostituting of children. *See id.* The Court agrees that these circumstances support a finding of implied confidentiality. *Cf. Landano*, 508 U.S. at 179. The FBI thus properly withheld the names and other identifying information of these sources and the information they provided. *See* Seidel Decl. ¶¶ 118–20, 124–26. As for foreseeable harm, the FBI explains that disclosing the information these sources provided could jeopardize the FBI's ability to ask these sources for help going forward and could subject the sources to reprisal. *See id.* The FBI properly asserted Exemption 7(D) as to this information.

*Third*, Exemption 7(E). That exemption protects "information compiled for law enforcement purposes" when its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines" for the same. 5 U.S.C. § 552(b)(7)(E). The FBI applied this exemption to protect the non-public investigative techniques and procedures it uses. *See* Seidel Decl. ¶ 128. The D.C. Circuit has explained that this exemption sets "a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The key is whether disclosure "could reduce or nullify [the] effectiveness" of the investigative techniques and procedures. *Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).

The FBI easily clears that low bar. Its declarant explains that the FBI withheld collection methods, analysis of investigative information, sensitive file numbers, types and timing of investigations, information about targets, dates, and the scope of surveillance, and more. *See* Seidel Decl. ¶¶ 129–55. The FBI adequately explained that it applied this exemption to non-public investigative techniques and procedures that it uses to enforce laws. *See id.* And the FBI articulates a context-specific foreseeable harm: releasing investigative techniques could help

criminals evade the law, employ countermeasures, and avoid criminal activities in a particular area to evade detection. *See id.* More, this Court has recognized that the sensitive context in which Exemption 7(E) claims often arise suggest a finding of foreseeable harm. *See Reps. Comm.*, 567 F. Supp. 3d at 129–31. The FBI has properly asserted Exemption 7(E).

## C.

The FBI also withheld 38 pages in full because they are sealed by court order. *See* Def.'s MSJ at 30; Seidel Decl. ¶ 158 (citing case number 08-mj-08068-LRJ (S.D. Fla.)). To assess whether the FBI properly withheld sealed records, this Court looks to whether the seal prohibits the agency from disclosing the records. *See Judicial Watch*, 813 F.3d at 383; *see also Morgan v. DOJ*, 923 F.2d 195, 197 (D.C. Cir. 1991). The FBI's declarant attests that the FBI searched for an unsealing order within the case file on the Public Access to Court Electronic Records ("PACER") system but found none. *See* Seidel Decl. ¶ 158. The FBI also contacted the U.S. Attorney's Office to ask about the seal. *See id.* That USAO informed the FBI that the court order was sealed under Federal Rule of Criminal Procedure 6(e). *See id.* Most importantly, the FBI asserts that it withheld records and information "pursuant to court order" in its statement of undisputed material facts, *see* SMF ¶ 21, ECF No. 34-3, which the Court finds admitted because Clemente failed to oppose them. *See* LCvR 7(h). Given all of this, the Court finds that summary judgment is proper as to these records.[5]

---

[5] Had Clemente disputed the FBI's assertions, this would have been a closer call. For the D.C. Circuit has made clear that courts cannot rely on the "mere existence of the seal," but must "inquir[e] into its intended effect." *Morgan*, 923 F.2d at 197. This Court does so by evaluating four factors: (1) any explicit sealing order from the court, if one exists; (2) extrinsic evidence about the intended scope of a purported sealing order; (3) orders of the same court in similar circumstances; and (4) the issuing court's general rules or procedures. *See id.* at 197–98; *accord Judicial Watch*, 813 F.3d at 383. But given the FBI's uncontroverted statement that these documents are sealed by court order, the Court finds that summary judgment is proper.

**D.**

The FBI properly issued a *Glomar* response.[6]  An agency may issue a *Glomar* response in circumstances where even acknowledging the fact of a record's existence would result in harm under one or more FOIA exemptions.  *See* 5 U.S.C. § 522(b)(7)(A).  The FBI issued two *Glomar* responses to Clemente.  One pertained to her request for documents about certain third parties and another to her request for confidential human source records.  *See* Seidel Decl. ¶¶ 166, 172.  The FBI refused to confirm or deny the existence of records pertaining to certain third parties because doing so would violate privacy interests that Exemptions 6 and 7(C) protect.  *See id*. ¶ 166.  And the FBI refused to confirm or deny the existence of certain confidential human source records because doing so would harm interests related to its confidential source program that Exemption 7(D) protects.  *See id.* ¶ 172.  Clemente has not challenged these *Glomar* responses, and the Court finds that they are proper.  *Cf. Roth*, 642 F.3d at 1178.

**E.**

The Court finds that the FBI properly satisfied its segregability burden.  The FBI must show "with reasonable specificity" why a document cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).  And the FBI is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  The FBI's declarant explains that the agency reviewed each record to identify information exempt from disclosure and determined that there is no meaningful, non-exempt information that can be reasonably

---

[6] The phrase "*Glomar* response" derives from *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), in which the CIA refused to confirm or deny the existence of records relating to the "Hughes Glomar Explorer," a ship allegedly deployed by the U.S government to raise a sunken Soviet submarine for analysis by the U.S. military and intelligence community.  *See Roth*, 642 F.3d at 1171.

segregated and released.  *See* Seidel Decl. ¶ 164.  So the burden is on Clemente to offer contrary evidence to rebut the applicable presumption.  *See Sussman*, 494 F.3d at 1117.  She has not done so.  The Court therefore finds that the FBI disclosed all reasonably segregable, non-exempt information.  *See id.*

## IV.

For these reasons, the Court will grant the FBI's motion for summary judgment.  A separate Order will issue.

Dated: November 21, 2022                                    TREVOR N. McFADDEN, U.S.D.J.